## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **NATIONAL LABOR** | ) | |
| **RELATIONS BOARD,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 16-00061-WS-N** |
| | ) | |
| **LEAR CORPORATION** | ) | |
| **EEDS and INTERIORS,** | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATIONS

Under 29 U.S.C. § 161(2), the National Labor Relations Board ("the Board") has filed with the Court two applications to order enforcement of certain administrative subpoenas it has served on Respondent Lear Corporation EEDS and Interiors ("Lear"). (Doc. 1; Doc. 7 at 3 – 12, 315 – 414). Lear has timely filed responses in opposition to the applications (Doc. 7 at 101 – 308; Docs. 9, 10), and the Board has timely filed replies (Doc. 7 at 415 – 419; Doc. 12) to the responses.[1] A hearing on the applications was held before the undersigned on Friday, April 15, 2016. Present were Alexandra K. R. Schule, Esq., counsel for the Board, and J. Trent Scofield, Esq. and Kathryn M. Willis, Esq., counsel for

---

[1]     The first subject application was filed in S.D. Ala. Case No. 1:16-mc-00001-WS-N (commenced 1/15/2016), the second in the above-styled action (commenced 2/11/2016). The Court has since consolidated the first-filed case into this one (*see* Doc. 6), and all filings from the first-filed action have been made a part of the record in this action (*see* Doc. 7). As the applications were brought at different times and consolidation did not occur until after separate schedules had been set, separate briefing has been filed for each of the applications.

Additionally, the Board has substituted new exhibits for the ones initially attached to its first-filed application. (*See* Doc. 8 at 2). Accordingly, the undersigned has not considered the replaced exhibits.

Lear.

The applications are now under submission, are ripe for disposition, and under S.D. Ala. GenLR 72(b), have been referred to the undersigned Magistrate Judge for entry of a recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), and S.D. Ala. GenLR 72(a)(1)(S).[2]   Upon consideration, the undersigned finds that Lear's objections to enforcement are due to be **OVERRULED**, that the Board's applications for enforcement (Doc. 1; Doc. 7 at 3 – 12, 315 - 414) are due to be **GRANTED**, that Lear's alternate requests for entry of a protective order are due to be **DENIED**, and that the Board's request for an award of attorneys' fees incurred in bringing these applications is due to be **DENIED**.

## I.      Background

The Board requests that this Court issue an order enforcing a total of ten administrative subpoenas, collectively issued in three separate cases against Lear pending before the Board.   Board Case No. 15-CA-140072 was initiated against Lear by the filing of a formal charge on November 3, 2014.   (Doc. 7 at 316).   This charge has been amended on several occasions, with a third amended charge being filed on January 26, 2016 (*id.* at 129 – 130), alleging twelve alleged incidents of improper conduct by Lear against certain employees for their union

---

[2] *See, e.g., NLRB v. Frazier*, 966 F.2d 812, 818 (3d Cir. 1992) (holding that, because an application for enforcement under 29 U.S.C. § 161(2) is a dispositive matter, a district court must review a magistrate judge's decision on the application under the *de novo* standard of 28 U.S.C. § 636(b)(1)(C)).

activities, either in the form of retaliation, interrogation, or surveillance, occurring in June through October 2014.   The following subpoenas have been issued in Case No. 15-CA-140072:

1. Subpoena *Duces Tecum* No. B-1-KFU8N5, issued December 17, 2014, "requires the production of the books, records, documents, and other materials within the possession or under the control of Lear Renosol Selma Manufacturing Facility, wherever such documents may be located," which concern each of the charged incidents.   (*Id.* at 324 – 331).

2. Subpoena *Ad Testificandum* No. A-1-KGCOJP, issued December 18, 2014, requires Kathy Jones, a Lear safety supervisor, to appear before a Board representative to testify concerning her knowledge of the charged incidents at Lear.   (*Id.* at 338 – 340).

3. Subpoena *Ad Testificandum* No. A-1-KGDB47, issued December 18, 2014, requires Matthew Robinson, a Lear supervisor, to appear before a Board representative to testify concerning his knowledge of the charged incidents at Lear.   (*Id.* at 347 – 349).

4. Subpoena *Ad Testificandum* No. A-1-KGDH05, issued December 18, 2014, requires John Smith, a Lear supervisor, to appear before a Board representative to testify concerning his knowledge of the charged incidents at Lear.   (*Id.* at 356 – 358).

5. Subpoena *Ad Testificandum* No. A-1-KGDVG5, issued December 18, 2014, requires Tim Brugger, a Lear superintendent, to appear before a Board

representative to testify concerning his knowledge of the charged incidents at Lear.   (*Id.* at 363 – 365).

6. Subpoena *Ad Testificandum* No. A-1-KGEB05, issued December 18, 2014, requires Connie Messer, a Lear human resources supervisor, to appear before a Board representative to testify concerning her knowledge of the charged incidents at Lear.   (*Id.* at 370 – 372).

7. Subpoena *Ad Testificandum* No. A-1-KGEOUH, issued December 18, 2014, requires Cindy Bozeman, a Lear materials supervisor, to appear before a Board representative to testify concerning her knowledge of the alleged incidents at Lear.   (*Id.* at 377 – 379).

8. Subpoena *Ad Testificandum* No. A-1-KGD9T9, issued December 18, 2014, requires Mike Walkowski, a Lear supervisor, to appear before a Board representative to testify concerning his knowledge of the alleged incidents at Lear.   (*Id.* at 384 – 386).

Board Case No. 15-CA-146313 was initiated against Lear by the filing of a formal charge on February 12, 2015.   (Doc. 1-1 at 2).   The charge has been twice amended, with a second amended charge filed January 26, 2016, listing seven alleged incidents of improper conduct by Lear against its employees in relation to their union activities, occurring in January and February 2015.     (*Id.* at 7 – 8). Subpoena *Duces Tecum* No. B-1-NVOXOL, issued against Lear in Case No. 15-CA-146313 on August 18, 2015, "requires the production of the books, records, documents, and other materials within the possession or under the control of

Lear Renosol Selma Manufacturing Facility, wherever such documents may be located," which concern each of the charged incidents.   (*Id.* at 17 – 25)

Board Case No. 15-CA-148040 was initiated against Lear by the filing of a formal charge on March 12, 2015.   (*Id.* at 10).   The charge has been twice amended, with a second amended charge filed January 26, 2016, listing four alleged incidents of improper conduct, occurring in March 2015, by Lear against certain employees for their union activities, either in the form of interrogation or retaliation. (*Id.* at 14).   Subpoena *Duces Tecum* No. B-1-NVG15D was issued against Lear in Case No. 15-CA-148040, on August 18, 2015, and "requires the production of the books, records, documents, and other materials within the possession or under the control of Lear Renosol Selma Manufacturing Facility, wherever such documents may be located," which concern each of the incidents. (*Id.* at 30 – 38).

The above-referenced ten subpoenas are collectively referred to herein as "the Subpoenas."   Lear filed petitions with the Board to revoke the Subpoenas, or alternatively to enforce them under a protective order (*id.* at 44 – 50, 52 – 58; Doc. 7   at 195 – 205), which the Board denied (Doc. 1-1 at 60 – 62, 64 – 66; Doc. 7 at 306 – 308).   After informal attempts to secure Lear's compliance with the Subpoenas did not succeed, the Board filed the present applications seeking their enforcement.

## II.    <u>Jurisdiction and Venue</u>

The Board's applications are properly brought under 29 U.S.C. § 161(2),

which provides:

> In case of contumacy or refusal to obey a subpena issued to any
> person,[3] any district court of the United States . . . , within the
> jurisdiction of which the inquiry is carried on or within the
> jurisdiction of which said person guilty of contumacy or refusal to
> obey is found or resides or transacts business, upon application by
> the Board shall have jurisdiction to issue to such person an order
> requiring such person to appear before the Board, its member, agent,
> or agency, there to produce evidence if so ordered, or there to give
> testimony touching the matter under investigation or in question;
> and any failure to obey such order of the court may be punished by
> said court as a contempt thereof.

*See also NLRB v. Wilson*, 335 F.2d 449, 451 (5th Cir. 1964)[4] ("The district court

has power to enforce [subpoenas issued by the Board] under 29 U.S.C.A.

161(2)…").

The Subpoenas were issued in connection with the Board's investigation of

charges alleging unlawful activity occurring at Lear's facility in Selma, Dallas

County, Alabama, which is part of this judicial district.   *See* 28 U.S.C. §

81(c)(1).[5]   Thus, jurisdiction and venue in this Court are both proper.

### III.   General Legal Standards

"For the purpose of all hearings and investigations, which, in the opinion of

the Board, are necessary and proper for the exercise of the powers vested in it by

sections 159 and 160 of this title[, t]he Board, or its duly authorized agents or

---

[3] "The term 'person' includes one or more . . . partnerships, associations, [and ]corporations,"
among other entities. 29 U.S.C. § 152(1).

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh
Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior
to October 1, 1981.

[5] This is the Board's second subpoena enforcement action brought in this Court against of
Lear.   *See* S.D. Ala. Case No. 1:15-mc-00005-CG-N.

agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question."   29 U.S.C. § 161(1).   "The provision can be read only as giving the [Board] a right to obtain that evidence, not a mere license to seek it."   *Univ. of Pa. v. EEOC*, 493 U.S. 182, 192 (1990) (rejecting the contention that "that Title VII's subpoena enforcement provisions do not give the [Equal Employment Opportunity ]Commission an unqualified right to *acquire* []evidence" as inconsistent with "the plain language of the text of [42 U.S.C. ]§ 2000e–8(a), which states that the Commission '*shall . . . have* access' to 'relevant' evidence (emphasis added).").[6]

The Supreme Court has recognized the broad investigatory power of administrative agencies:

> Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence

---

[6] EEOC investigations have also been governed by § 161 since 1972.   *See* 42 U.S.C.A. § 2000e-9.   Thus, decisions involving the EEOC's investigatory powers are equally relevant in construing those of the Board.   *Cf. EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 309 n.6 (7th Cir. 1981) ("The investigatory powers of 29 U.S.C. s 161 ... originally belonged to the National Labor Relations Board, and ... were subsequently made available to the EEOC in a 1972 amendment to 42 U.S.C. s 2000e-9.   By that amendment Congress obviously intended the EEOC powers to be construed in light of prior interpretations of the Labor Board's powers.").

but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

*United States v. Morton Salt Co.,* 338 U.S. 632, 642–43, 70 S. Ct. 357, 364, 94 L. Ed. 401 (1950). *See also Peters*[ *v. United States*]*,* 853 F.2d [692,] 696[ (9th Cir. 1988)] ("[t]he authority of an administrative agency to issue subpoenas for investigatory purposes is created solely by statute").

"It is well-settled that the role of a district court in a proceeding to enforce an administrative subpoena is sharply limited; inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency." *EEOC v. Kloster Cruise Ltd.,* 939 F.2d 920, 922 (11th Cir. 1991). "As a general rule, an administrative subpoena should be enforced 'if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.' " *Federal Election Com'n v. Florida for Kennedy Committee,* 681 F.2d 1281, 1284 (11th Cir. 1982) (citations omitted). *See also Burlington Northern R. Co. v. Office of Inspector General R.R. Retirement Bd.,* 983 F.2d 631, 638 (5th Cir.1993).

*United States v. Fla. Azalea Specialists*, 19 F.3d 620, 622-23 (11th Cir. 1994).

*See also Univ. of Pa. v. EEOC*, 493 U.S. 182, 191 (1990) ("[W]hen a court is asked to enforce a Commission subpoena, its responsibility is to 'satisfy itself that the charge is valid and that the material requested is "relevant" to the charge ... and more generally to assess any contentions by the employer that the demand for information is too indefinite or has been made for an illegitimate purpose.'   It is not then to determine 'whether the charge of discrimination is "well founded" or "verifiable." ' " (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n. 26 (1984))). The policy behind such limited review is "[t]o avoid delays that might paralyze

an agency's ability to investigate . . . " *Fed. Election Comm'n v. Fla. for Kennedy Comm.*, 681 F.2d 1281, 1284 (11th Cir. 1982).   Thus, "agency subpoena enforcement proceedings are 'of a summary nature not requiring the issuance of process, hearing, findings of fact, and the elaborate process of a civil suit.' " *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 310-11 (7th Cir. 1981) (quoting *Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450, 451 (6th Cir. 1941)).[7]

"The salutary policies of judicial and administrative efficiency that underlie the *Morton Salt* rule do not, however, require that the courts limit their scrutiny of agency subpoena requests in every case."   *Fla. for Kennedy*, 681 F.2d at 1284.   For instance, characteristics of a subpoena may "make it necessary for the court to be certain of the [agency]'s investigative authority before enforcing it, although such scrutiny may entail some delay in enforcement." *Id.* Moreover, "whenever it is made to appear to the court that a subpoena is too broadly or oppressively drawn or there are reasons to believe that it will be enforced capriciously or oppressively, it is the duty of the court to prevent abuse of its process[,]" *Jackson Packing Co. v. NLRB*, 204 F.2d 842, 844 (5th Cir. 1953) (citing *NLRB v. Anchor Rome Mills*, 197 F.2d 447 (5th Cir. 1952)), and "[i]t is

---

[7] The Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings."   Fed. R. Civ. P. 81(a)(5).   "Although the provision allows full recognition of the fact that the rigid application of the rules in the proceedings themselves may conflict with the summary determination desired, it is drawn so as to permit application of any of the rules in the proceedings whenever the district court deems them helpful."   Fed. R. Civ. P. 81 advisory committee's note to 1946 amendment (citations omitted).

clear that the district court can effectively exercise its discretion so as to relieve the [subpoenaed party] from any undue oppression or burden without quashing the subpoenas entirely." *NLRB v. Duval Jewelry Co. of Miami*, 257 F.2d 672, 673 (5th Cir. 1958). *See also EEOC v. Royal Caribbean Cruises, Ltd.*, 771 F.3d 757, 760, 763 (11th Cir. 2014) (per curiam) ("A district court … 'may weigh such equitable criteria as reasonableness and oppressiveness in issuing a subpoena for documents.' *EEOC v. Packard Elec. Div., Gen. Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978) … The court in *Packard* stated that a district court is authorized to 'weigh such equitable criteria as reasonableness and oppressiveness' and that 'this rubric impl[ies] a balancing of hardships and benefits.' 569 F.2d at 318. The use of such ... criteria' and the plural of 'hardship' and 'benefit' clearly indicates that a district court may consider a number of factors in this analysis, rather than requiring specific types of evidence on a single factor.").

District courts have discretion to enter a protective order in conjunction with enforcing an administrative subpoena. *See McLaughlin v. Serv. Emps. Union, AFL-CIO, Local 280*, 880 F.2d 170, 174 (9th Cir. 1989) ("We review a district court's determination to issue a protective order imposing restrictions on an administrative subpoena for abuse of discretion."); *FTC v. Lonning*, 539 F.2d 202, 211 (D.C. Cir. 1976) ("In order to protect trade secrets, district courts have required appropriate protection as a precondition to enforcement of FTC subpoenas. The decision as to the type and scope of any protective order rests

within the sound discretion of the trial judge and must be determined on a case by case basis." (citations omitted)); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994) ("Courts have inherent power to grant orders of confidentiality over materials not in the court file. In *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984), the Supreme Court confirmed that courts have the power to grant confidentiality orders over material not on file with the court, *id.* at 33 n.19, 104 S. Ct. at 2207 n.19, holding that 'we have no question as to the court's jurisdiction to [enter protective orders] under the inherent "equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices," ' *id.* at 35, 104 S. Ct. at 2209 (quoting *International Prods. Corp. v. Koons,* 325 F.2d 403, 407–08 (2d Cir. 1963)).").

"[T]he sole criterion for determining the validity of a protective order is the statutory requirement of 'good cause.' " *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) (per curiam) (citing, e.g., *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984), and Fed. R. Civ. P. 26(c)). *See also Pansy*, 23 F.3d at 785-86.   " 'Good cause' is a well established legal phrase. Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action. In a different context, [the Eleventh Circuit] has identified four factors for ascertaining the existence of good cause which include: '[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous

alternative; and [4] the duration of the order.' " *In re Alexander Grant*, 820 F.2d
at 356 (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1205 (11th
Cir. 1985)). "In addition, this circuit has superimposed a 'balancing of interests'
approach to Rule 26(c)." *Id.* (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d
1545, 1547 (11th Cir. 1985)). *See also Corcel Corp. v. Ferguson Enters., Inc.*, 291
F.R.D. 680, 681 (S.D. Fla. 2013) ("The burden of persuasion is on the party
moving for a protective order." (citing *Cipollone v. Liggett Grp., Inc.*, 785 F.2d
1108, 1122 (3d Cir. 1986))).

## IV.   Analysis

### a. Duplicative Investigations & the Memorandum of Understanding

In support of its assertion that the Court should decline to enforce the
Subpoenas, or in the alternative enter a protective order limiting their scope,
Lear's lone substantive contention is that the Board's investigation is duplicative
of an Occupational Safety and Health Administration (OSHA) investigation into
the same issues.   (Doc. 9 at 7-9; M.C. Doc. 4 at 15-18).[8]   In *Perez v. Lear Corp.
EEDS & Interiors, et al*, S.D. Ala. Case No. 2:15-cv-00205-CG-M, now pending
before this Court, OSHA has secured preliminary injunctive relief and filed a
Complaint against Lear based on fact patterns substantially related to those in

---

[8] Lear's briefs also cite authority generally stating other grounds for a district court to quash
or modify an administrative subpoena (e.g., information sought is unrelated to underlying
charge, or seeks to initiate or expand charges; investigation exceeds agency's statutory
authority; overbreadth; "fishing expedition").   However, Lear has offered no substantive
analysis for why any of those other grounds apply in this action, either in its briefing or at
oral argument.   Because those issues are insufficiently raised, the undersigned declines to
address them.

the Board's unfair labor practice charges that are the subject of the Subpoenas.

OSHA's actions are brought pursuant to Section 11(c) of the Occupational Safety

and Health Act (OSH Act), 29 U.S.C. § 660(c).   (*See* S.D. Ala. Case No.

2:15-cv-00205-CG-M [Doc. 1 at 1; Doc. 50 at 1]).

Lear asserts that, by insisting on compliance with the Subpoenas even as

OSHA's *Perez* action remains ongoing, the Board is contravening a 1975

Memorandum of Understanding between the two agencies that has been

published in the Federal Register, 40 Fed. Reg. 26083 (hereinafter, the "MOU").[9]

The stated purposes of the MOU are "to avoid duplicate litigation and insure that

the exercise by employees of their rights in the area of health and safety will be

protected…"   40 Fed. Reg. at 26083.   Discussing the overlap of subject matter

between the agencies' respective statutory mandates in section 11(c) of the

Occupational Safety and Health Act ("OSH Act") and Sections 7 and 8 of the

National Labor Relations Act ("NLRA"), the MOU recognizes:

> Although there may be some safety and health activities which may
> be protected solely under the (OSH) Act, it appears that many
> employee safety activities may be protected under both Acts.
> However, since an employee's right to engage in safety and health
> activity is specifically protect by the OSH Act and is only generally
> included in the broader right to engage in concerted activities under
> the NLRA, it is appropriate that enforcement actions to protect such
> safety and health activities should primarily be taken under the
> OSH Act rather than the NLRA.

*Id.* (paragraph 3-A).   *See also NLRB v. Oakes Mach. Corp.*, 897 F.2d 84, 91 (2d

Cir. 1990) (discussing the MOU's provisions); 15 Emp. Coord. Workplace Safety §

---

[9] Lear has also filed copies of the MOU with the record.   (*See* Doc. 7 at 191 – 192; Doc. 10-1).

5:65 (same).

Section B of the MOU sets out various procedures to be followed where a charge filed with the Board involves issues covered by section 11(c) of the OSH Act, depending on the circumstances:

> B.    *Procedural agreement.* 1. When a charge involving issues covered by Section 11(c) of the OSH Act has been filed with the [NLRB's] General Counsel and a Complaint has been filed with OSHA as to the same factual matters, the General Counsel will, absent withdrawal of the matter, defer or dismiss the charge. The General Counsel will inform the charging party of its action and will send a copy of such letter to OSHA.
>
> 2. Where a charge involving issues covered by section 11(c) of the OSH Act has been filed with the General Counsel, but no complaint has been filed with OSHA, the General Counsel will notify the employee of his right to file a complaint under section 11(c), which right should be exercised within 30 days.  If the employee notifies the General Counsel of the filing of an OSHA complaint, or if the General Counsel is so informed by OSHA pursuant to consultations at the end of the 30-day period, then the General Counsel will proceed in accordance with paragraph B-1 above.
>
> 3. The General Counsel will process under the NLRA those charges involving issues covered by section 11(c) of the OSH Act where, after notice pursuant to paragraph B-2 above, the charging party has not filed or, having filed, has withdrawn a complaint with OSHA.
>
> 4. Where a charge has been filed with the General Counsel which includes both issues covered by Section 11(c) of the OSH Act and matters within the exclusive jurisdiction of the General Counsel, the General Counsel and the Office of the Solicitor of Labor will consult in order to determine the appropriate handling of the matter.
>
> 5. The parties to this agreement will engage in periodic consultations in order to review its implementation.

*See id.* at 26084.

In its briefing at the administrative level, Lear asserted that the Subpoenas were due to be revoked, or alternatively that a protective order should be entered, because, *inter alia*, the underlying charges were due to be dismissed or deferred under paragraph B-1 of the MOU.   In opposition to Lear's petitions to revoke, the Board's General Counsel did not dispute that paragraph B-1 was the relevant provision but argued that an investigation was necessary to determine if dismissal or deferral was appropriate.   (*See* Doc. 7 at 198 – 200, 293, 295 – 296, 299 – 302; Doc. 1-1 at 46 – 49, 54 – 57 [duplicate at Doc. 10-6 at 4 – 7]).

A majority of a 3-member panel of the Board rejected Lear's petitions to revoke.   After summarily rejecting Lear's other arguments for revocation, the majority, essentially agreeing with the General Counsel's position, held that "the MOU does not require the Region to determine whether to defer or dismiss such charges, or engage in consultations with the Solicitor of Labor concerning deferral or dismissal, without having investigated the facts and circumstances surrounding the allegations."   Though the majority specifically quoted only paragraph B-1 as the "relevant part" of the MOU, their mention of "consultations with the Solicitor of Labor" suggests they also considered the applicability of paragraph B-4.   (Doc. 1-1 at 60 – 61, 64 – 65; Doc. 7 at 306 – 307).[10]

---

[10] The Board panel issued three separate orders in denying Lear's various petitions to revoke.   However, the orders are substantively identical in all relevant aspects.

The dissenting member voiced his belief that, "in light of its stated goal of 'obviat[ing] duplicate litigation,' …. the MOU requires the General Counsel to comply with [Section B's] procedures before the Region conducts any investigation."   Asserting that the relevant MOU provision was paragraph B-4 and noting there was no evidence that a consultation prescribed by that provision had occurred, the dissent would have revoked the Subpoenas, but without prejudice to reissuance of one or more of them following the consultation. Appearing to accept "the General Counsel's assertion that 'the totality of the circumstances must be considered' to determine the merits of the allegations that arise solely under the NLRA," the dissent stated that he "would not attempt to sort out which aspects of the subpoenas seek evidence related to issues covered by Sec. 11(c) of the OSH Act, and which seek evidence limited to matters within the exclusive jurisdiction of the General Counsel."   Notably, the dissent did not suggest that the charges against Lear should be deferred or dismissed under the MOU.   Moreover, in stating his belief that no investigation could commence prior to compliance with the MOU, the dissent conceded "**the MOU does not explicitly indicate when compliance with [its] procedures is to occur** …" (Doc. 1-1 at 61 – 62, 65 – 66; Doc. 7 at 407 – 408 (emphasis added)).

Here, Lear asserts that, whether paragraph B-1 or B-4 of the MOU applies, the Board is required to follow the prescribed procedures upon the filing of a charge and prior to undertaking any investigation.   Because the Board has not done so, Lear argues, the Court should decline to enforce the Subpoenas.   For its

part, the Board essentially restates the arguments of its General Counsel that won the day at the administrative level and the opinion of the Board majority. The Board has never taken the position that it does not intend to comply with the MOU <u>at some point</u>, nor does it contest Lear's ability to challenge in this Court the Board's compliance with the MOU.   The Board has cited no authority in support of its position (other than the above-discussed Board opinions), and the undersigned finds the scant authority Lear has cited to be unrevealing on the issue.[11]   *See infra*, n.15.   However, the undersigned need not determine when the terms of the MOU require compliance with its procedures.

"[N]ot all agency publications are of binding force…"   *Lyng v. Payne*, 476 U.S. 926, 937 (1986).   "[I]n other words, the guidelines in question must be 'the kind of agency law the violation of which is remediable at all.' "   *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 229 (5th Cir. 2006) (quoting *Lyng*, 476 U.S. at 937)).

> In determining whether a regulation has the "force and effect of law," the Supreme Court has distinguished between "substantive rules" on the one hand, and "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice" on the other. *Chrysler Corp. v. Brown,* 441 U.S. 281, 301, 99 S. Ct. 1705, 1717, 60 L. Ed. 2d 208 (1979). For a regulation to have the force and effect of law, and thus to be the source of an affirmative legal

---

[11] Lear admits that it "cannot locate a reported decision where a district court has been required to address this particular issue presented."   (Doc. 7 at 118).   The undersigned has similarly come up empty-handed.

> obligation, it must be a "substantive rule." *United States v. Harvey*,
> 659 F.2d 62 (5th Cir. Unit B 1981).[12]

*Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544, 1547-48 (11th Cir. 1985).

"[A] substantive or legislative-type rule i[s] one 'affecting individual obligations,'

*Morton v. Ruiz*, 415 U.S. 199, 232, 94 S. Ct. 1055, 1073, 39 L. Ed. 2d 270 (1971)

which has been issued by the agency pursuant to statutory authority and

promulgated in accordance with the procedural requirements of the

Administrative Procedure Act.  *Chrysler Corp. v. Brown*, 441 U.S. at 302-303,

99 S. Ct. at 1718."  *Harvey*, 659 F.2d at 64.

"Nonlegislative rules are those not promulgated pursuant to a power to

issue regulations with binding effect; they are merely an expression of how the

agency interprets and intends to enforce its governing statute, how it intends to

exercise a discretionary function, or the procedure an agency intends to use in

exercising its powers."  *Am. Trucking Ass'n, Inc. v. United States*, 688 F.2d

1337, 1341 (11th Cir. 1982), *rev'd on other grounds*, *I.C.C. v. Am. Trucking

Ass'ns, Inc.*, 467 U.S. 354 (1984).  "[N]on-substantive rules are not judicially

enforceable."  *Gatter v. Nimmo*, 672 F.2d 343, 347 (3d Cir. 1982) (citing

*Schweiker v. Hansen*, 450 U.S. 785 (1981) (per curiam); *Chrysler Corp.*, 441 U.S.

at 301-02)).  *Accord First Family Mortg. Corp. of Fla. v. Earnest*, 851 F.2d 843,

844-45 (6th Cir. 1988) (citing cases).  *See also Harvey*, 659 F.2d at 64-65

---

[12] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding all decisions issued by a Unit B panel of the former Fifth Circuit.

(provisions of administrative manual were general statements of agency policy that did "not create substantive rights … enforceable in federal court").

Though it is published in the Federal Register, there is no indication that the MOU was promulgated in accordance with the notice-and-comment requirements of the Administrative Procedure Act. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203-04 (2015) (describing APA procedures); *Coliseum Square*, 465 F.3d at 230 ("Here, plaintiffs neither argue nor offer evidence that HUD's guidelines were promulgated under the Administrative Procedure Act's procedural requirements. Plaintiffs's [sic] first argument therefore fails: HUD has not acted contrary to law by using methodology different from that contained in the Guidebook."). Moreover, nothing in the MOU indicates intent to allow non-parties to invoke its provisions. Rather, read as a whole, the undersigned finds the MOU is most appropriately considered a non-substantive general statement of policy, with Section B setting forth non-substantive rules of agency procedure or practice to implement that general policy.[13]

*Smith v. Russellville Production* is illustrative. There, the appellants argued "that a regulation stating that, as a general policy, [federally charted Production Credit Associations] shall provide means of forbearance to

---

[13] *See Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987) ("The distinctive purpose of [the] exemption[] for 'rules of agency organization, procedure or practice,' is to ensure 'that agencies retain latitude in organizing their internal operations." … 'A useful articulation of the exemption's critical feature is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which parties present themselves or their viewpoints to the agency.'" (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980) (citation omitted)).

cooperative borrowers, *see* 12 C.F.R. § 614.4510(d)(1), imposes an affirmative duty on PCAs and provides the basis for an implied private right of action." 777 F.2d at 1547. Analyzing its precedent in *Harvey*, the Eleventh Circuit held:

> [T]he "means of forbearance" regulation … is not a substantive rule but, rather, is a general statement of agency policy. The regulation states that, when banks and associations develop their loan servicing policies and procedures, "*the policy* shall provide a means of forbearance" for borrowers meeting certain criteria. 12 C.F.R. § 614.4510(d)(1) (emphasis added). Although the term "shall" indicates the mandatory nature of this policy, the regulation is nevertheless directed at agency policy, and is not a substantive rule. Accordingly, we hold that 12 C.F.R. § 614.4510(d)(1) does not have the force and effect of law, and does not provide the basis for an implied private right of action on behalf of borrowers such as the Smiths.

*Id.* at 1548. Like the regulation in *Smith*, the MOU, despite the mandatory nature of Section B in its use of the term "will," is "directed at agency policy, and is not a substantive rule." *Id.*

The undersigned also finds, as did the D.C. Circuit in *American Hospital v. Bowen*, that

> [t]he Fifth Circuit's decision in *United States Department of Labor v. Kast Metals Corp.*, 744 F.2d 1145 (5th Cir. 1984), is particularly instructive with regard to this [issue]. In *Kast Metals,* the court of appeals held that the Occupational Safety and Health Administration ("OSHA") had validly developed a calculus to target employers for inspection, despite the fact that this calculus had been adopted without notice and comment rulemaking. The court reasoned that OSHA's inspection plan, known as CPL 2.25B, fell far short of the sort of investigative activity likely to have the intent or effect of substantially altering party behavior. *Id.* at 1150. "The creation and use of CPL 2.25B to select employers for inspection did

not of itself constitute investigation; rather, the plan sets forth procedural steps to guide the agency in exercise of its statutory authority to conduct investigations." 744 F.2d at 1150 (footnote omitted). In classifying OSHA's rule as procedural under § 553, the Fifth Circuit wrote, "[t]he Secretary used CPL 2.25B to concentrate OSHA's inspection resources in industries with the highest potential for safety and health violations.... The plan is procedural on its face." *Id.* at 1152.

834 F.2d 1037, 1047 (D.C. Cir. 1987).   Applying the Fifth Circuit's reasoning, the D.C. Circuit held that, "[l]ike OSHA rule CPL 2.25B, HHS Manual IM85–2[, promulgated by the Department of Health and Human Services to define procedures governing the review functions of peer review organizations,] operates to concentrate agency inspection resources in areas (here, medical procedures) with the highest potential for statutory violations (here, violations of Medicare's reimbursement standards), and like CPL 2.25B, HHS' manual is procedural on its face."   *Id.*

Similar to the administrative promulgations in *Kast Metals* and *American Hospital*, the MOU is simply an interagency agreement that "sets forth procedural steps to guide [OSHA and the Board] in exercise of [their shared] statutory authority to conduct investigations" related to certain protected activity.   *Kast Metals Corp.,* 744 F.2d at 1150.   In those cases, the promulgations were aimed at maximizing use from limited agency resources by concentrating them in areas with the highest potential for violations; here, the MOU is aimed at conserving limited agency resources by "avoid[ing] duplicate litigation."   *See also Am. Hosp.*, 834 F.2d at 1050 ("[E]nforcement plans

developed by agencies to direct their enforcement activity warrant considerable deference.").[14]   Because the MOU is non-substantive, Lear, having failed to persuade the Board to follow its view of the MOU, is not entitled to have this Court force the Board to do so here.

Lear asserts that the Board's "clear disregard of its own defined protocol casts suspicion on its true intentions in this case" (Doc. 7 at 110 – 111), which could certainly be relevant to whether there is a "reason[] to believe that [the Subpoenas] will be enforced capriciously or oppressively," thus invoking "the duty of the court to prevent abuse of its process," *Jackson Packing*, 204 F.2d at 844, or "that the demand for information … has been made for an illegitimate

---

[14]   The undersigned has located one published case in which the Board and OSHA did not appear to treat the MOU as binding.   In *NLRB v. Oakes Machine Corp.*, 897 F.2d 84 (2d Cir. 1990), an employee filed both a complaint with OSHA and a charge with the Board, claiming that he was discharged in violation of both Section 11(c) of the OSH Act and Sections 7 and 8 of the NLRA for seeking workplace safety information from two state government agencies.   *See* 897 F.2d at 90-91.   It was undisputed that, at the time the charge was filed, the employee "could have succeeded on his claim under either the NLRA or the OSH Act and could have obtained identical relief in either forum…" *Id.* at 91. Nevertheless, as the Second Circuit criticized, OSHA and the Board "contravened the general policy of their joint agreement, and decided that OSHA would defer to the NLRB" on the matter – "ironically, because his 'rights [might be] vindicated more quickly through Board processes than [by OSHA]'."   *Id.*

However, the court expressed no opinion on the MOU's substantive nature *vel non*, or to what extent the agencies were bound to comply with it.   Rather, the court's criticism was made in the context of determining whether manifest injustice counseled against giving retroactive effect to a change in Board policy that occurred during the intervening six years the Board took to process an appeal from an initial favorable decision by an administrative law judge.   The court answered that question in the affirmative, finding that the charging party's reasonable reliance on "the agencies' assessment of the issue" in deferring to the Board on his charge resulted in his case "languish[ing]" for eight years at the administrative level, during which time the Board overruled prior standards crucial to the employee's claims.

Moreover, as is explored elsewhere in this recommendation, the MOU's "general policy" of deferring to OSHA is far clearer from the plain text of the document than when deferral should occur.

purpose." *Univ. of Pa.*, 493 U.S. at 191 (quotations omitted).   However Lear has failed to persuade the undersigned that the Board's decision to conduct some investigation to determine whether dismissal or deference under the MOU is warranted is a capricious, oppressive, or otherwise illegitimate use of its subpoena power.   Lear has provided no evidence or authority suggesting the Board has disregarded prior precedent on the issue or has otherwise engaged in inconsistent or selective enforcement of the MOU.[15]   Indeed, consideration of the majority and dissenting opinions in the Board's orders denying revocation suggests that the issue of when compliance with the MOU is to occur is an unsettled question at the administrative level.   Neither the majority nor the dissent cited any authority in support of its respective position regarding the MOU, and the dissent expressly acknowledged "the MOU does not explicitly indicate when compliance with [its] procedures is to occur."   *See Lyng*, 476 U.S. at 939 ("[A]n agency's construction of its own regulations is entitled to substantial deference.").   Lear's bare insinuations that the Board is acting as a union "litigation arm," rather than a neutral "enforcer of federal labor law" (Doc.

---

[15] The two advice memoranda from the Board's General Counsel that Lear has cited, *Subject: Mazer Chemicals, Inc.*, Case 13-CA-21004, 1981 WL 25947 (June 29, 1981), and *Subject: Tsa Corp.*, Case 30-CA-6620, 1983 WL 29399 (May 5, 1983), provide little clarity on the issue.   Neither memorandum specifically discusses or mentions the MOU as a basis for recommending dismissal of its subject charge.   While each memorandum contains some language referencing the policy of deferring to OSHA on certain matters, neither document discusses this policy in absolute or mandatory terms (*Mazer Chemical*, for instance, simply refers to it as "current policy").   More importantly, neither document indicates that its recommendation of dismissal was issued prior to any investigatory activities by the Board. Indeed, *Mazer Chemicals* expressly based its recommendation of dismissal in part on insufficiency of the evidence, suggesting that some investigation of the charge had occurred beforehand.

7 at 101), and its general complaints regarding the expense of complying with the Subpoenas[16] also fail to convince the undersigned that the Subpoenas should not be enforced.[17]

For the foregoing reasons, the undersigned finds that Lear's objections to enforcement of the Subpoenas are due to be **OVERRULED**, and that its alternative request for a protective order "to clarify the information sought by the NLRB and necessarily limit it in order to eliminate the duplicate overlap with OSHA's § 11(c) whistleblower investigation" (Doc. 7 at 119 – 120) (in effect, simply another way of asking the Court to enforce Lear's view of the MOU) is due to be **DENIED**.[18]    Accordingly, and being otherwise satisfied that enforcement of the Subpoenas is appropriate under the relevant standards, the

---

[16] *Cf. NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 114 (5th Cir. 1982) (per curiam) ("The mere fact that compliance with the subpoenas may require the production of thousands of documents is also insufficient to establish burdensomeness.").

[17] Lear also argues that "the potential for contradictory fact findings and conclusions of law that could result from dual-track investigations by OSHA and the NLRB is obvious" and "promises to create chaos in future litigation." (Doc. 7 at 118).    While dual-track investigations certainly may be inconvenient, Lear has not cited any demonstrative authority or otherwise explained how it would be prejudiced by this.    Indeed, the MOU expressly recognizes that OSHA and the Board share statutory authority over certain subject matter, and the very fact the MOU was negotiated indicates that dual-track investigations could be contemplated under those statutes.    Regardless, any such concern is too speculative at this point.

[18] The Board is cautioned, however, that this recommendation should not be interpreted as license to conduct an indefinite investigation of the underlying charges under the guise of determining whether to defer to OSHA under the MOU.    At all times in this action, the Board has represented to the Court under Federal Rule of Civil Procedure 11 that it intends to make a determination of how to proceed under the MOU at some point and that the information sought by the Subpoenas is necessary to making an informed decision of whether to defer to OSHA.    (*See* Doc. 7 at 417 – 418; Doc. 12 at 2 – 3).    The longer the Board's investigation of this matter continues without such a determination, the more persuasive Lear's assertions the investigation is capricious, oppressive, or otherwise illegitimate may become in future subpoena enforcement actions.

undersigned finds that the Board's applications for enforcement are due to be **GRANTED**.

### b.     Attorneys' Fees and Costs

The Board's applications also request that Lear be ordered "to reimburse the Board for the costs and attorneys fees (calculated at the prevailing market rate) incurred in initiating and prosecuting this subpoena enforcement action…" (Doc. 1 at 6; Doc. 7 at 11).   Lear has responded that such an award of attorneys' fees is inappropriate.   (Doc. 7 at 120 – 121; Doc. 9 at 10).   As an initial matter, the authorities cited by both parties, and the undersigned, are in agreement that 29 U.S.C. § 161 does not, on its face, provide for an award of attorney's fees to any party in subpoena enforcement actions like this one.   *See NLRB v. Edwards*, No. 2:11MC3546-WKW, 2012 WL 235522, at *2 (M.D. Ala. Jan. 10, 2012) (Walker, M.J.) ("Although the statute authorizing enforcement of the Board's administrative subpoena provides that the court may punish the respondent for contempt in the event he fails to obey the court's order requiring him to appear, it does not provide expressly for an award of attorney fees upon the court's issuance of such an order."), *report and recommendation adopted*, No. 2:11-MC-3546-WKW, 2012 WL 229637 (M.D. Ala. Jan. 25, 2012) (Watkins, C.J.). The Board has not, however, cited any authority under which it may be awarded attorney's fees. *See* Fed. R. Civ. P. 54(d)(2)(B) ("Unless a statute or a court order provides otherwise, [a] motion [for attorney's fees] must . . . specify the judgment and the statute, rule, or other grounds entitling the movant to the award . . .");

*NLRB v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991, 999 (N.D. Cal. 2004) ("[N]either § 161(1) nor § 161(2) has any provision regarding payment of attorney fees or costs incurred in enforcing a subpoena in district court. The only basis for allowing fees or costs is under § 161(2), when 'failure to obey such order of the court may be punished by said court as a contempt thereof.'   However, this applies when the district court has already issued an order enforcing compliance to the subpoena and the party disobeys the order.   *See* 29 U.S.C. § 161(2). It does not appear that the statute would cover costs incurred in filing a motion to enforce compliance.").

In the authorities cited by the Board, district courts awarded it fees in § 161(2) subpoena enforcement actions as discovery sanctions against the opposing parties under Federal Rule of Civil Procedure 37.   *See Cable Car*, 319 F. Supp. 2d at 999 – 1001 & n.9 (awarding fees under Rule 37(d) for failure to comply with discovery, noting that "the Board's subpoenas seek documents from and depositions of the opposing party and, in this respect, are comparable to discovery requests pursuant to Rules 34 (documents) and 30 (depositions).");[19]

---

[19] The undersigned notes that the *Cable Car* opinion consists of a magistrate judge's report and recommendation and a district judge's order on same, with the pertinent language on attorneys' fees found in the R&R.   The district judge adopted the R&R "in every respect, except the Court f[ound] that the costs and attorneys' fees are inconsequential, and thus order[ed] the parties to bear their own costs and attorneys' fees[,]" though the "order regarding attorneys' fees and costs [wa]s made without prejudice" to the Board "renew[ing] its motion for attorneys' fees and costs should further attorneys' fees and costs be incurred. 319 F. Supp. 2d at 993.   Since the district judge ended up awarding no fees in that opinion, *Cable Car*'s reasoning on fees could be considered dictum. However, this observation is largely academic, as district court dicta have as much precedential authority as district court holdings – that is, none at all.   *See United States v. Cerceda*, 172 F.3d 806, 812 n.6

*NLRB v. Baywatch Sec. & Investigations*, Civil Action No. H-04-220, 2005 WL 1155109, at *3 (S.D. Tex. Apr. 28, 2005) (applying *Cable Car*'s reasoning and awarding the Board fees under Rule 37(d)); *NLRB v. Coughlin*, No. 4:04-MC-8, 2005 WL 850964, at *5 (S.D. Ill. Mar. 4, 2005) (appearing to analogize a subpoena enforcement action under § 161(2) to a Rule 37(a) motion to compel and awarding fees under Rule 37(a)(5)(A)).[20]   However, the undersigned finds more persuasive the authorities cited by Lear indicating that subpoena enforcement actions under § 161(2) are not the equivalent of engaging in discovery under the Federal Rules of Civil Procedure.

In particular, those authorities direct attention to *EEOC v. Deer Valley Unified School District*, 968 F.2d 904 (9th Cir. 1992), in which the Ninth Circuit determined that a subpoena enforcement action like this one is "not a form of discovery enabled by the Federal Rules of Civil Procedure."   968 F.2d at 906. The court reasoned as follows:

> The investigatory subpoena power of the EEOC is based on specific statutory authority, not on the general discovery provisions of the Federal Rules of Civil Procedure.   The EEOC has express statutory authority to issue "subpoenas requiring the attendance and

---

(11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district.").

[20]  The Board has also cited *NLRB v. A.G.F. Sports Ltd.*, No. MISC. 93-049 (CBA), 1994 WL 507779, at *1 (E.D.N.Y. June 22, 1994), as supporting an award of fees to the Board for bringing this action.   However, as another district court has already noted, that case "pertains to calculation of the amount of fees and costs allowable pursuant to an earlier order awarding costs and fees. It includes no discussion regarding the legal authority supporting such an award and, accordingly, is not persuasive."   *Edwards*, 2012 WL 235522, at *2 n.3.

testimony of witnesses or the production of any evidence" during its investigations. 42 U.S.C. § 2000e–9, incorporating the provisions of 29 U.S.C. § 161(1).  It is clear that the EEOC has the power to investigate charges of discrimination and to utilize the statutory subpoena power in doing so. *EEOC v. Children's Hosp. Medical Ctr.,* 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc); *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 476 (4th Cir.), *cert. denied,* 479 U.S. 815, 107 S. Ct. 68, 93 L. Ed. 2d 26 (1986); 42 U.S.C. §§ 2000e–5(b); 2000e–8(a); 2000e–9.

Because this is not a form of discovery enabled by the Federal Rules of Civil Procedure, no "discovery motion" is required to enforce it. The EEOC brought an original action to enforce a statutorily authorized subpoena. It is significant to note that the comments to Fed. R. Civ. P. 45, which authorizes subpoenas in aid of discovery, specify that "[i]t does not apply to the enforcement of subpoenas issued by administrative officers and commissions pursuant to statutory authority. The enforcement of such subpoenas by the district courts is regulated by appropriate statutes." Fed. R. Civ. P. 45 advisory committee's notes.

The function of administrative investigatory subpoenas differs from that of the discovery provisions of the Federal Rules of Civil Procedure. The discovery provisions apply to actions that have already been filed with the court, and the parties are seeking to develop evidence for the action that is before the court. The statutory subpoena authority, on the other hand, is designed for administrative investigations, which may or may not result in any further action before the district court. The enforcement is dependent upon the interpretation of statutory authority, not the interpretations of the discovery provisions of the Federal Rules of Civil Procedure. The Supreme Court stated in *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S. Ct. 357, 94 L. Ed. 401 (1950), that an agency "has a power of inquisition ... which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is

> being violated, or even just because it wants assurance that it is
> not." *Id.* at 642–43, 70 S. Ct. at 364.

*Id.* (footnote omitted) (vacating sanction against EEOC for failure to comply with

district court local rule requiring parties to meet to discuss their dispute before

filing any discovery motion).   *See also Edwards*, 2012 WL 235522, at *2 (relying

on *Deer Valley* and other authorities in denying fees to the Board under Rules 37

and 45); *NLRB v. Durham Sch. Servs., L.P.*, No. 3:14MC52/MCR/EMT, 2015 WL

150898, at *2 (N.D. Fla. Jan. 12, 2015) (Rodgers, C.J.) (same).

Accordingly, the undersigned finds the Board is not entitled to an award of

attorneys' fees under § 161(2), Rule 37, or Rule 45 for bringing this subpoena

enforcement action.   As the Board cites no other "statute, rule, or other

grounds" indicating such an award is appropriate, *see* Fed. R. Civ. P.

54(d)(2)(B)(ii), the undersigned finds that its request for attorneys' fees is due to

be **DENIED**.[21]

However, ***at this time***, the undersigned finds no reason to believe that the

Board would not be entitled to an award of costs in this action.   *See* Fed. R. Civ.

P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides

otherwise, costs – other than attorney's fees – should be allowed to the prevailing

---

[21] Even if Rule 37 were applicable, the undersigned would still recommend that the Board be
awarded no attorneys' fees under that Rule in this instance.   Though the undersigned has
rejected them, Lear's arguments against enforcement of the Subpoenas were based on a
plausible reading of the MOU, were not contrary to any clear precedent (certainly none cited
by the Board), and were not otherwise frivolous.   *See* Fed. R. Civ. P. 37(a)(5)(A)(ii) & (d)(3)
(attorney's fees should not be awarded where the opposing party's resistance to discovery
was "substantially justified").

party."); *Edwards*, 2012 WL 235522, at *2, *report and recommendation adopted*, No. 2:11-MC-3546-WKW, 2012 WL 229637, at *1 (taxing costs against respondent under Rule 54).   In the event the Board is the prevailing party in this action, it may apply for costs in accordance with S.D. Ala. CivLR 54 and the Court's Standing Order No. 13.[22]

## V.   <u>Conclusion</u>

In accordance with the foregoing analysis, it is **RECOMMENDED** that Lear's objections to enforcement of the Subpoenas be **OVERRULED**, that the Board's applications for enforcement (Doc. 1; Doc. 7 at 3 – 12) be **GRANTED**, that Lear's alternate request for entry of a protective order be **DENIED**, and that the Board's request for an award of attorneys' fees incurred in bringing these applications be **DENIED**.   The undersigned further **RECOMMENDS** the Court set a date certain for Lear to comply with the Subpoenas.

## VI.   <u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and

---

[22] www.alsd.uscourts.gov/sites/alsd/files/STDO13.PDF

recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."   11th Cir. R. 3-1.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this the 10th day of May 2016.

            */s/ Katherine P. Nelson*
            **KATHERINE P. NELSON**
            **UNITED STATES MAGISTRATE JUDGE**