IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, ) | |
| ) | |
| Applicant, ) | |
| ) | |
| v. ) | CIVIL ACTION 16-0061-WS-N |
| ) | |
| LEAR CORPORATION EEDS AND INTERIORS, ) | |
| ) | |
| Respondent. ) | |

ORDER

This matter comes before the Court on the National Labor Relations Board's Applications for Order Enforcing Subpoenas Duces Tecum (doc. 1; doc. 7, at 3-11). On May 10, 2016, the Magistrate Judge entered a Report and Recommendations (doc. 16), wherein she recommended that both Applications be granted, that respondent's objections be overruled, and that respondent's request for entry of a protective order be denied. Respondent, Lear Corporation EEDS and Interiors ("Lear"), has filed timely Objections (doc. 17) to the Report and Recommendations, along with a supporting memorandum of law (doc. 18).[1]

I.     Background.

   A.     *History of the Administrative Subpoenas.*

The material facts and circumstances culminating in this dispute over enforcement of administrative subpoenas are uncontested. Lear operates a manufacturing facility in Selma,

---

[1] Also pending is Lear's "Motion to Stay Magistrate's [*sic*] Report and Recommendation" (doc. 19). In that filing, Lear states, "The Report and Recommendation directs Lear to fully comply with the ten (10) administrative subpoenas" (doc. 19, ¶ 1), and asks that such directive be stayed until Lear's objections are resolved. However, the Report and Recommendations did not direct Lear to do anything, but simply recommended that the NLRB's Applications be granted and that Lear's objections be overruled. Such recommendations are nothing more than that, unless and until such time as they may be adopted, modified or rejected by this Court. *See generally* 28 U.S.C. § 636(b)(1); General L.R. 72(c). Because the Report and Recommendations imposes no compliance duties on Lear antecedent to a final ruling by this Court, the Motion to Stay is unnecessary and, therefore, **moot**.

Alabama, where it makes automotive seats.  In approximately May 2014, three employees at this facility (Kim King, Letasha Irby, and Denise Barnett) complained to the Occupational Safety and Health Administration ("OSHA") about workplace exposure to an organic compound called toluene diisocyanate ("TDI").  These individuals also voiced their concerns publicly through various media, including an NBC News story, a YouTube video, and other news articles.  Lear reassigned the three complaining employees to the warehouse (a different building at the Selma facility) in September 2014, prompting all three employees to file OSHA § 11(c) whistleblower complaints challenging their transfers as retaliatory.  OSHA's investigation into those whistleblower complaints is apparently ongoing at this time.[2]

On or about November 3, 2014, nonparty International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO ("UAW"), filed an unfair labor charge against Lear with the NLRB.  The stated basis of the charge was that Lear had "interfered with, restrained and coerced employees Letasha Irby, Kim King and Denise Barnett in the exercise of their section 7 rights by threatening them with termination, transferring them to different positions because of their protected concerted activity regarding their working conditions and union activities, threatened them with and initiated discipline against them … and engaged in surveillance." (Doc. 7, at 132.)  In early 2015, the NLRB received two other unfair labor practice charges against Lear, involving allegations that, *inter alia*, Lear had unjustly disciplined Irby and King.  (Doc. 1-1, at 1-14.)

In its ensuing investigation of these three unfair labor practice charges (the "ULP Charges"), the NLRB issued a total of ten administrative subpoenas to Lear seeking production of books, records and documents, and commanding certain Lear supervisors to appear and testify before an NLRB representative concerning the subject incidents.  The NLRB issued these

---

[2]     Indeed, the Department of Labor has filed suit against Lear in this District Court in an action styled *Thomas E. Perez, Secretary of Labor v. Lear Corporation EEDS and Interiors, et al.*, Civil Action 15-0205-CG-M, for relief under § 11(c) of OSHA.  The *Perez* suit involves OSHA's claims that Lear retaliated against the three employees for complaining about TDI exposure at the Selma facility.  Such retaliation is alleged to have taken the form of transfers to the warehouse facility, as well as other retaliatory acts (suspension, termination, denial of leave, commencement of litigation for defamation and interference with business relations, directives that they perform job duties differently and in a more onerous manner than other employees).

subpoenas pursuant to 29 U.S.C. § 161(1).[3]  Lear responded by petitioning the NLRB to revoke the subpoenas; however, that request was denied by a three-member panel of the Board.  When Lear still declined to comply, the Board filed a pair of applications in this District Court to compel the enforcement of those subpoenas pursuant to 29 U.S.C. § 161(2).  Lear opposes those applications.

Lear's opposition to the NLRB's applications for enforcement hinges on a 1975 Memorandum of Understanding (the "MOU") between the NLRB and OSHA that was published in the Federal Register.  The stated purpose of the MOU was "to avoid duplicate litigation and insure that the exercise by employees of their rights in the area of health and safety will be protected."  40 Fed.Reg. 26083.  The MOU recognized that many employee safety and health activities may be protected under both the National Labor Relations Act ("NLRA") and the Occupational Safety and Health Act ("OSH Act").  To address that overlap, the MOU explained that "since an employee's right to engage in safety and health activity is specifically protected by the OSH Act and is only generally included in the broader right to engage in concerted activities under the NLRA, it is appropriate that enforcement actions to protect such safety and health activities should primarily be taken under the OSH Act rather than the NLRA."  *Id.*  On that basis, the MOU set forth an interagency "procedural agreement" that where the NLRB receives an unfair labor practice charge covering "the same factual matters" as a § 11(c) complaint filed with OSHA, the NLRB "will, absent withdrawal of the matter, defer or dismiss the charge."  (*Id.*)  Such procedural agreement also included a section under which the NLRB and the Office of the Solicitor of Labor "will consult in order to determine the appropriate handling" of an unfair labor practice charge including both issues covered by § 11(c) of the OSH Act and issues within the NLRB's exclusive jurisdiction.  (*Id.*)  Lear's position is that the subpoenas are void because the NLRB issued them in contravention of the "defer or dismiss" requirement of the MOU.

---

[3]  That section provides that the Board "shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question.  The Board … shall … forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceedings or investigation requested in such application."  *Id.*

### B. *The Report and Recommendations.*

In her Report and Recommendations, Magistrate Judge Nelson concluded that Lear's reliance on the MOU to oppose the administrative subpoenas was misplaced. In so doing, she examined case law distinguishing between substantive agency rules (which have the force and effect of law) and non-substantive / procedural agency rules (which are not judicially enforceable and do not create substantive rights enforceable in federal court). (Doc. 16, at 17-19.) The Magistrate Judge reasoned that the MOU is "most appropriately considered a non-substantive general statement of policy" because there is no evidence that the MOU was promulgated under the Administrative Procedure Act's notice-and-comment requirements, and nothing in the MOU purports to confer enforcement rights upon third parties. (*Id.* at 19.) As the Report and Recommendation observed, "the MOU is simply an interagency agreement that sets forth procedural steps to guide OSHA and the Board in exercise of their shared statutory authority to conduct investigations." (*Id.* at 21 (citation and internal marks omitted).) On that basis, the Magistrate Judge opined that Lear could not judicially compel the NLRB to adhere to the MOU.

The overarching theme in Lear's filings is that the NLRB's efforts to enforce the administrative subpoenas in this case are nothing more than a strong-arm tactic calculated "to advance the UAW's agenda [against Lear] through costly and protracted litigation." (Doc. 7, at 102.) Lear brands the NLRB as "serving as the litigation arm of the Union" and asserts that the NLRB's failure to abide by the MOU "casts suspicion on its true intentions." (*Id.* at 110-11.) The Magistrate Judge correctly acknowledged that the NLRB's motivations matter, and that enforcement of subpoenas issued for an illegitimate purpose may properly be denied. (Doc. 16, at 22-23.)[4] Nonetheless, she concluded that Lear had failed to make a persuasive showing that

---

[4] *See, e.g., University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 191, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (when a court is asked to enforce administrative subpoena issued by EEOC, "its responsibility is … more generally to assess any contentions by the employer that the demand for information is too indefinite or has been made for an illegitimate purpose") (citation and internal quotation marks omitted); *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) ("It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose …") (footnote omitted); *E.E.O.C. v. Homenurse, Inc.*, 2013 WL 5779046, *8 (N.D. Ga. Sept. 30, 2013) (in administrative subpoena context, "a court may refuse enforcement where to do so would be a (Continued)

the NLRB's actions here were "a capricious, oppressive, or otherwise illegitimate use of its subpoena power." (*Id.* at 23.)

Because the Magistrate Judge determined that the MOU was non-substantive and not judicially enforceable by Lear, and because she rejected Lear's assertion that the NLRB had issued the subpoenas for an improper purpose, the Report and Recommendations concluded that the NLRB's application for enforcement should be granted, and that Lear's objections should be overruled. (*Id.* at 24-25.)[5] Lear's ensuing objections to the Report and Recommendations were referred to the undersigned for disposition.

## II.   Analysis.

### A.   *Legal Standard.*

Where, as here, a party objects to a magistrate judge's report and recommendation concerning a dispositive matter,[6] the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "A judge of the court may also accept, reject, or modify, in

---

gross abuse of the EEOC's discretion, such as when the subpoena was issued for an improper purpose").

    [5]    The Report and Recommendations also addressed Lear's alternative request for entry of a protective order "to clarify the information sought by the NLRB and necessarily limit it in order to eliminate the duplicate overlap with OSHA's § 11(c) whistleblower investigation." (Doc. 7, at 119-20.) The Magistrate Judge opined that the request for protective order was "in effect, simply another way of asking the Court to enforce Lear's view of the MOU," and therefore recommended that it be denied. (Doc. 16, at 24.)

    [6]    The parties appear to be in agreement that adjudication of the NLRB's requests for enforcement of its administrative subpoenas constitutes a dispositive matter for purposes of § 636(b)(1) review. Case law is in accord with that principle. *See, e.g., N.L.R.B. v. Frazier*, 966 F.2d 812, 818 (3rd Cir. 1992) ("[I]n this case the question of subpoena enforcement is not ancillary to the Board's main action in the district court. Rather, the Board applied to the district court in a special proceeding, under 29 U.S.C. § 161(2) …. The magistrate judge's decision was not a pretrial determination of a motion collateral to the main proceeding before the district court, but a final decision which disposed entirely of the Board's business before the court. The district court should have reviewed the magistrate judge's decision accordingly."); *N.L.R.B. v. Edwards*, 2012 WL 235522, *1 n.1 (M.D. Ala. Jan. 10, 2012) (in action brought by NLRB to compel compliance with subpoena, the magistrate judge "proceeds by recommendation because the matter referred is case dispositive").

whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court's review of Lear's objections to the Report and Recommendations proceeds in recognition of these statutory directives. That said, the Court also hews to the principle that "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted).

   **B.** ***Lear's Objection that the Subpoenas are a Clear Violation of the MOU.***

  The focal point of Lear's Objections is that the Magistrate Judge erred in "finding that the investigative subpoenas are enforceable, despite the NLRB's clear failure to follow its stated protocol published in the Federal Register." (Doc. 17, at 2.) In lieu of discussing the Report and Recommendations head-on in its Objections and explaining specifically why it believes the Magistrate Judge's findings are incorrect, Lear block-quotes (with only modest edits and without attribution) significant chunks of its previous briefing. (*Compare* doc. 18, at 6-12, *with* doc. 7, at 110-11 & 115-19.)

  Nonetheless, the gravamen of Lear's argument is that the administrative subpoenas should not be enforced because the NLRB issued them in blatant disregard of the MOU's requirements. Upon *de novo* review, the Court is not persuaded that the MOU requires denial of the NLRB's applications for enforcement of the subject subpoenas. Simply put, Lear's contention that the NLRB subpoenas are incompatible with the Board's obligations under the MOU is unsupported by the text of the MOU, the NLRB's interpretations of same, or extant case authority. To be sure, the MOU provides that where, as here, an unfair labor practice charge filed with the NLRB covers "the same factual matters" as a § 11(c) complaint filed with OSHA, the NLRB "will, absent withdrawal of the matter, defer or dismiss the charge." Likewise, there can be no reasonable dispute that the ULP Charges filed with the NLRB against Lear overlap in significant factual respects with the three § 11(c) whistleblower complaints filed with OSHA against Lear; indeed, they all allege that Lear retaliated against employees Letasha Irby, Kim King and Denise Barnett for complaining about TDI exposure in the Selma manufacturing facility. It also appears undisputed that the ULP Charges touch on additional matters beyond the scope of the § 11(c) OSHA complaints.

  The fatal flaw in Lear's argument lies in its unsupported logical leap from these uncontroversial propositions to its conclusion that the MOU prohibits the NLRB from taking any

investigative steps as to covered matters.  Here is why:  Although the MOU does specify that the NLRB is to "defer or dismiss" an unfair labor practice charge involving the same factual matters as a § 11(c) complaint filed with OSHA, it does not say <u>when</u> the NLRB must defer or dismiss that charge.  On its face, the MOU does not forbid the NLRB from conducting any investigation prior to such deferral or dismissal.  Nor has Lear cited a single instance in which the Board or any court in the last four decades has ever construed the MOU as manifesting an absolute, *per se* ban on NLRB investigative activity.[7]  Thus, Lear's position is predicated on a reading of the MOU that neither courts nor the Board have ever embraced, and that would require additional restrictions and covenants to be judicially inserted into the MOU where they do not presently exist.

      Far from being barred by the MOU, the NLRB maintains that its issuance of subpoenas to Lear is actually in furtherance of the NLRB's obligations under that agreement.  After all, the MOU directs the NLRB to "defer or dismiss" a charge covering the same factual matters as a § 11(c) complaint to OSHA.  On its face, then, the MOU gives the NLRB two options: (i) deferral, or (ii) dismissal.  The NLRB's common-sense, reasonable position throughout this dispute has been that it cannot make an informed determination as to whether deferral or dismissal of the ULP Charges is the appropriate option in this case without first conducting its own investigation;

---

[7]  To the contrary, the majority opinion of a three-member panel of the NLRB that reviewed Lear's request to revoke the subpoenas in this case interpreted the MOU in exactly the opposite manner.  That majority opinion concluded as follows: "[W]e find that the MOU does not require the Region to determine whether to defer or dismiss such charges, or engage in consultations with the Solicitor of Labor concerning deferral or dismissal, without having investigated the facts and circumstances surrounding the allegations." (Doc. 1-1, Exh. L, at 1-2.) The lone dissenting member of the panel wrote, "I believe the MOU required the General Counsel to comply with these procedures before the Region conducts any investigation" (*id.* at 2), citing the MOU's objective of "obviat[ing] duplicate litigation."  There is no indication, however, that any other Board member, or Board panel, ascribes to this dissenting view.  Besides, the dissent's rationale is unpersuasive, because it equates investigation with litigation, despite the vast conceptual differences between them.  Simply stated, duplicate <u>litigation</u> may be avoided even if the NLRB conducts its own <u>investigation</u> of unfair labor practice charges encompassing § 11(c) OSHA matters prior to dismissing or deferring them.

therefore, its issuance of the subpoenas is proper, in good faith, and entirely consistent with the MOU.[8]  Lear belittles the NLRB's stance, but offers no meaningful rebuttal.

The foregoing considerations loom large here because of the narrowly circumscribed role that federal courts play in the context of enforcement of administrative subpoenas.  *See, e.g., E.E.O.C. v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991) ("It is well-settled that the role of a district court in a proceeding to enforce an administrative subpoena is sharply limited; inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency.").  The appropriate question is not whether this Court would have seen fit to issue the challenged subpoenas were it standing in the NLRB's shoes.  Instead, the narrow, limited question presented by the NLRB's Applications and Lear's Objections is whether the NLRB is abusing this Court's process by seeking enforcement of those administrative subpoenas for an improper purpose.  *See, e.g., United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) ("It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused.").[9]

In opposing enforcement of the NLRB's subpoenas in federal court, Lear relies on the "improper purpose" rationale for denying enforcement.  Indeed, Lear posits that the NLRB has been a "willing participant[] to advance the UAW's agenda through costly and protracted

---

[8]    Indeed, the NLRB has maintained that "it is impossible for [the Board] to comply with the MOU's guidance to dismiss or defer the ULP allegations" without an investigation, and that such an investigation "cannot be completed without the documents and testimony requested in the subpoenas at issue."  (Doc. 12, at 2.)  Elsewhere, the NLRB has emphasized this defect in Lear's opposition by observing that Lear "fails to propose how [the NLRB] would determine whether a charge should be dismissed or deferred without first conducting an investigation."  (Doc. 7, at 417.)

[9]    *See also United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 819 (8th Cir. 2012) ("The court's process is abused when a subpoena is issued for an improper purpose, such as to harass the [respondent] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.") (citation and internal quotation marks omitted); *Burlington Northern R. Co. v. Office of Inspector General, R.R. Retirement Bd.*, 983 F.2d 631, 638 (5th Cir. 1993) ("Courts will not enforce an administrative subpoena … if the subpoena was issued for an improper purpose, such as harassment."); *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166-67 (3rd Cir. 1986) ("[I]f a subpoena is issued for an improper purpose, such as harassment, its enforcement constitutes an abuse of the court's process.").

litigation," that the NLRB issued the subpoenas "as the litigation arm of the Union," that the "NLRB's clear disregard of its own defined protocol casts suspicions on its true intentions in this case and the application should be denied," and the NLRB is acting "in an arbitrary and capricious manner" by "ignor[ing] its own published protocols." (Doc. 7, at 102, 110-11; doc. 18, at 2.) In support of this charged rhetoric, Lear asserts that it is a "patently obvious fact that the NLRB's ongoing investigation" violates the MOU. (Doc. 9, at 2.) Lear also insists that the NLRB's position "defies legitimate explanation" and amounts to "abuse of process," thereby triggering this Court's duty "to ensure that administrative subpoenas are not the tools of an abuse [*sic*] process." (*Id.* at 4, 9.)

A respondent challenging administrative subpoenas bears a heavy burden to show an improper purpose. *See, e.g., United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012) ("The respondent bears a heavy burden to disprove the existence of a valid purpose for an administrative subpoena."); *Doe v. United States*, 253 F.3d 256, 272 (6th Cir. 2001) (affirming district court decision enforcing administrative subpoena where respondent had failed to meet "heavy" burden of "showing institutional bad faith," that DOJ had been motivated by improper purpose in issuing subpoena). To carry this burden, Lear points to the NLRB's purported disregard of the MOU.[10] As demonstrated by the foregoing discussion, however, the MOU lends no support to Lear's accusations of bad faith. Again, nothing in the MOU (or judicial or administrative interpretations of same) would expressly bar the NLRB from investigating an unfair labor practice charge that overlaps with a § 11(c) OSHA complaint. The MOU gives the NLRB the option of deferring or dismissing the overlapping charges, and the NLRB has made a reasonable showing that it needed to conduct an investigation into the charges (and hence issue the administrative subpoenas) to inform its decision of whether they should be deferred or, instead, dismissed. As such, the language of the MOU, coupled with the NLRB's conduct in this case, does not satisfy Lear's heavy burden of showing that the Board

---

[10] Viewing its argument through this prism, Lear is not trying to compel the NLRB to comply with the MOU or asserting that it possesses a private right to enforce the MOU against the Board. Rather, Lear is pointing to the purported divergence between the MOU and the NLRB's conduct as evidence of what it characterizes as an improper purpose for the subpoenas, such that the Board's applications for enforcement amount to an abuse of process that this Court should not countenance.

was motivated by an improper purpose or institutional bad faith in issuing the administrative subpoenas.[11]

For all of these reasons, the undersigned finds that the NLRB's Applications for Order Enforcing Subpoenas Duces Tecum (doc. 1; doc. 7, at 3-11) against Lear are properly **granted**, and that Lear's objections to same are properly **overruled**.

### C.    *Lear's Objection that a Protective Order is Appropriate.*

Lear's Objections also seek *de novo* review of the Magistrate Judge's recommended denial of Lear's request for protective order, reasoning that such recommendation "does not take into account the pertinent facts and circumstances and is therefore incorrect." (Doc. 17, at 3.)

In its filings in opposition to the NLRB's Applications, Lear asserted that, if the subpoenas were to be enforced, the Court should exercise its discretion to enter a protective order "carving out the subjects clearly covered in the parallel OSHA proceeding" from the ambit of the NLRB's subpoenas. (Doc. 9, at 9; *see also* doc. 7, at 119-20 (requesting protective order "to clarify the information sought by the NLRB and necessarily limit it in order to eliminate the duplicate overlap with OSHA's § 11(c) whistleblower investigation").) The Report and Recommendations found that Lear's request for protective order was "simply another way of asking the Court to enforce Lear's view of the MOU" and therefore recommended that it be denied. (Doc. 16, at 24.)

In its ensuing Objections to the R & R, Lear for the first time recasts its request for protective order as seeking not exclusion of overlapping matters but a directive that the NLRB confer with OSHA before pursuing the subpoenas further. (*Compare* doc. 7 at 120 & doc. 9 at 9

---

[11]    Nor does Lear advance its cause by lamenting "the potential for contradictory fact findings and conclusions of law that could result from dual-track investigations by OSHA and the NLRB." (Doc. 18, at 10.) Implicit in this argument is Lear's assumption that the NLRB will litigate the administrative proceedings concerning the pending overlapping charges to conclusion, with the Board ultimately rendering findings of fact and conclusions of law concerning same. But Lear points to no evidence that the NLRB harbors any such intention. To the contrary, the NLRB has repeatedly represented to this Court that the purpose of the subpoenas is "to investigate the allegations brought against [Lear] so a determination can be made whether the allegations should be dismissed or deferred." (Doc. 7, at 417; *see also* doc. 12, at 2.) Thus, the NLRB has professed its intent to investigate the overlapping charges, then decide whether to defer or dismiss them in accordance with the MOU. Either way, there would be no "contradictory fact findings and conclusions of law," and Lear's stated concerns in that regard appear unfounded or, at best, purely speculative.

*with* doc. 18, at 12.)  The Court will exercise its discretion to decline to consider Lear's attempt to raise a new, previously available argument or to request new, previously available relief for the first time via objections to the Report and Recommendations.  *See, e.g., Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) ("We conclude that the district court has broad discretion in reviewing a magistrate judge's report and recommendation, and, therefore, the district court did not abuse its discretion in declining to consider Williams's timeliness argument that was not presented to the magistrate judge.").[12]

As originally formulated, Lear's request for protective order was simply that the Court "carv[e] out the subjects clearly covered in the parallel OSHA proceeding" from the scope of the subject subpoenas.  Both Lear and the Magistrate Judge agree that protective orders are available in the administrative subpoena context upon a showing of good cause.  *See, e.g., In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987) ("the sole criterion for determining the validity of a protective order is the statutory requirement of 'good cause'") (citations omitted); *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (explaining that federal courts have adopted a "balancing of interests approach" to rule allowing protective orders for good cause).

Lear's only "good cause" argument presented in filings to the Magistrate Judge was that "good cause exists to require the NLRB to honor its MOU published limitations and prohibit it form [*sic*] continuing duplicate litigation."  (Doc. 7, at 120.)  The Court disagrees.  As discussed *supra*, the NLRB has a valid, good-faith reason to conduct an investigation <u>in order to comply</u>

---

[12]    *See also United States v. Coulton*, 594 Fed.Appx. 563, 568 (11th Cir. Nov. 25, 2014) ("a district judge need not consider an argument that a party failed to present to the magistrate judge"); *Shepherd v. Corizon, Inc.*, 2013 WL 1561513, *1 (S.D. Ala. Apr. 12, 2013) ("a district judge has discretion not to consider an argument first raised after a magistrate judge has issued an R & R"); *Morrison v. United States*, 2012 WL 4711863, *3 (S.D. Ala. Oct. 3, 2012) ("This argument is not properly presented now because Morrison never articulated it to the Magistrate Judge."); *United States v. Ezell*, 2011 WL 772884, *4 (S.D. Ala. Mar. 1, 2011) ("Petitioner apparently having never previously alleged that counsel failed to satisfy his duty to consult, he should not be permitted to litigate the issue now via objections to the Report and Recommendation, where he never presented that argument to the Magistrate Judge."); *United States v. Hale*, 2010 WL 2105141, *10 n.18 (S.D. Ala. May 24, 2010) ("Even if Hale's guilty-plea ineffective assistance claim were timely, the Court would not consider it on the merits because Hale never presented this argument to the Magistrate Judge, but instead waited until his objections to the Report and Recommendation to assert it for the first time.").

with the MOU; otherwise, it will not be able to discern whether the appropriate disposition of the ULP Charges is deferral or dismissal. The proposed protective order would likely cripple the NLRB's investigation and prevent it from obtaining information it reasonably requires in order to make the deferral/dismissal decision. On the other side of the balance, Lear's only showing of harm is its stated, speculative fear of "contradictory fact findings and conclusions of law" if the NLRB investigation were allowed to proceed. In its discretion, the Court concludes upon balancing the parties' respective interests that good cause does not exist to justify entry of a protective order that effectively stifles the NLRB's ability to conduct an investigation of the ULP Charges and prevents it from complying with the MOU.[13] As such, respondent's request for entry of a protective order is **denied**.

### III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Respondent's "Motion to Stay Magistrate's [*sic*] Report and Recommendation" (doc. 19) is **moot**;

2. Respondent's Objections (doc. 17) to the Magistrate Judge's Report and Recommendation are **overruled**;

---

[13] As noted *supra*, the Court declines to consider Lear's brand-new argument that a protective order be entered to require consultation between the NLRB and OSHA pursuant to section B(4) of the MOU. Even if this contention were considered on the merits, however, the result would be unchanged. Lear makes no persuasive showing that the MOU mandates consultation between the NLRB and OSHA before any NLRB investigation may occur. Lear makes no persuasive showing that such consultation would likely reduce the burdens on Lear in responding to the subject subpoenas; after all, the NLRB still remains obligated to determine whether it should defer or dismiss the subject charges, which it says (with no rejoinder from Lear) it can only achieve after conducting an investigation. And Lear makes no persuasive showing that anyone other than a single dissenting member of the NLRB has ever interpreted the MOU as requiring such consultation prior to any NLRB investigation of overlapping charges. Besides, any request for a protective order directing the NLRB to satisfy the MOU's consultation provision before moving forward with the Lear subpoenas would be tantamount to an attempt to advance a private right of enforcement of the MOU. The Report and Recommendations explains in some detail why no such private right exists, and Lear has presented no meaningful challenge or rebuttal to that determination. For these reasons, the Court in its discretion would find no good cause warranting entry of the subject protective order, even if Lear had properly raised the consultation variant of its protective order request.

3.  After *de novo* review of those portions to which objections is made, and as supplemented by the analysis set forth in this Order, the Magistrate Judge's Report and Recommendations (doc. 16) is **adopted** by this Court pursuant to 28 U.S.C. § 636(b);

4.  The National Labor Relations Board's Applications for Order Enforcing Subpoenas Duces Tecum (doc. 1; doc. 7, at 3-11) are **granted**;

5.  Respondent's request for entry of a protective order is **denied**;

6.  Respondent is **ordered** to obey the ten administrative subpoenas issued by the NLRB, including subpoenas duces tecum B-1-KFU8N5, B-1-NVOXOL and B-1-NVG15D, and subpoenas ad testificandum A-1-KGCOJP, A-1-KGDB47, A-1-KGDH05, A-1-KGDVG5, A-1-KGEB05, A-1-KGEOUH and A-1-KGD9T9; and

7.  The parties are **ordered** to work together in good faith to make the necessary arrangements for compliance with the subpoenas;

8.  Respondent is **ordered** to comply with the above-referenced subpoenas as soon as reasonably practicable, but in no event later than **July 8, 2016**; and

9.  Because this Order resolves all issues and matters joined in this consolidated proceeding, the Clerk of Court is directed to **close** this civil file for administrative and statistical purposes.

DONE and ORDERED this 17th day of June, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE